JOHN D. OGDEN *v.* SALLIE B. OGDEN.

[Abstract Kentucky Law Reporter, Vol. 6—310.]

**Contest of Will After Probate.**

After a will has been admitted to probate upon the testimony of those who attested it as witnesses and of others the burden of proof is on the contestant to prove the facts alleged in his petition and the propounder may then introduce additional proof by way of rebuttal.

**Instructions.**

Where witnesses to a will appear in the county court and swear that the testator executed a will in their presence and that he was of sound mind at the time and thereafter in a contest of the will the same witnesses testify that the testator was of unsound mind it is not error for the trial court to refuse to instruct the jury as to their credibility. The importance to be attached to their statements is left to the jury and not to be determined by the court.

**Evidence.**

Where statements and admissions made by the propounder at the date of the execution of the will have been shown in evidence he may be allowed to explain his conduct or to deny that he made such statements as detailed by the witnesses and it is reversible error for the court not to permit him to testify, he being a competent witness.

APPEAL FROM DAVIESS CIRCUIT COURT.

October 23, 1884.

OPINION BY JUDGE PRYOR:

A paper purporting to be the last will and testament of Ben H. Ogden was admitted to probate in the Daviess County Court at the instance of John D. Ogden, his brother, at its April term in the year 1871.

The testator left surviving him his widow and an infant child

named Hattie who appealed from the judgment of probate to the Daviess Circuit Court in the year 1878. The statute of limitations was adjudged to be a bar to the appeal by the widow but over-ruled as to the infant who was only two months old when the will was probated and of tender years when the appeal was taken.

The paper was rejected by the court below in the year 1879 and on an appeal to this court the judgment below was reversed for certain alleged errors but the ruling by the lower court as to the right of the infant to appeal was sustained.

The case went back for a new trial and resulted the second time in a verdict and judgment against the alleged will, and is again in this court for review.

The record is very voluminous, containing a mass of irrelevant and incompetent testimony, and added to this errors have been as-signed to the number of seventy, rendering it difficult for this court to eliminate from it the many errors of which the appellant com-plains, and that must have resulted to his prejudice on the hearing.

There have been two concurring verdicts in favor of the contestant and this court ought not to disturb the verdict unless the errors committed are prejudicial to the appellant.

The paper in controversy was admitted to probate in the county court upon the testimony of those who attested it as witnesses and of others who were present at its execution and in court when pre-sented by the propounder. Several of these witnesses are now testifying as to the want of mental capacity on the part of the tes-tator at the time of its execution, and from their statements made many years after the original probate it is certainly remarkable that they could have made any statement to the county judge authorizing the conclusion that the testator signed the paper, or had the mental capacity to do so at the date of its execution. The facts essential to establish the will were shown to exist by three witnesses when presented to the county court and now the facts essential to show that it is not a valid instrument are made equally as plain by the same witnesses. Their explanations are given upon the record be-fore us but as it is a question for the court and jury below it is un-necessary and perhaps improper to comment upon this character of testimony. An instruction was asked by counsel for appellant as to the weight to be attached to the statements of those who appeared in the county court and testified as witnesses for the will and in

the Circuit Court as witnesses against it and this instruction was overruled and we think properly. All the facts were before the jury which doubtless considered the circumstances under which these witnesses testified and the importance to be attached to their statements should be left to them and not determined by the court.

In considering the errors assigned that arise from the rejection of competent and admission of incompetent testimony it is not necessary to take up each assignment as made but a reference generally to the testimony given and the objections urged on this branch of the case will suffice to determine the questions raised.

The propounder of the will, John D. Ogden, and Ben H. Ogden were brothers. They had been engaged as partners in running a grist mill in Owensboro, Kentucky, and had evidently accumulated some means. The title to the mill property seems to have been made to the devisor, Ben H. Ogden, as well as the title to other property alleged to have been purchased with partnership funds. John D. Ogden's theory of the case is that his brother, Ben H. Ogden, being about to die and being vested with title to all the partnership property it was necessary that he should make some statement showing the interest of his brother John in the partnership property.

The will was accordingly prepared by which it appears that the partnership existed and that his brother John was entitled to one-half of the estate of the devisor, it being the proceeds of the joint enterprise. The contestants say that if a partnership existed it had been dissolved, and if not dissolved the propounder of the will, John D. Ogden, had received before the execution of the will largely more than his proportion of the assets of the firm.

The issues presented in this case were, first, "as to the mental capacity of Ben H. Ogden to execute such a paper", and, second, was he procured to sign the paper said to have been executed by him by reason of the exercise of an undue influence over him by his brother at the time of its execution."

The testimony as to both issues is very conflicting and after the statutory proof of the due and proper execution of the paper had been made by the propounder the law then presumed the testator to have been of sound mind at the time and the burden shifted from the propounder to the contestant. After the examination of the attesting witnesses the will being entirely rational in its provisions it was not necessary or required of those favoring the probate to

introduce any other proof as to the mental condition of the testator, and when that will is assailed by the testimony of the contestant, upon the question of sanity or undue influence, the propounder may introduce additional proof by way of rebuttal upon these issues. Such was the ruling of this court in *Milton, &c. v. Hunter, &c.,* 13 Bush 163, and *Flood, &c. v. Pragroff, &c.,* 79 Kentucky, 607, those cases following in substance a practice recognized in this state for many years in the trial of this class of cases.

It was competent, therefore, on the issue, the contestants having by their testimony made out a state of case conducing to show a want of mind on the part of the testator, for them to show first, that no partnership existed between the brothers, and secondly, if there did the partnership had been dissolved. If such facts are established it must conduce to show the exercise of an improper influence over the testator or such a want of mental capacity on his part as prevented him from comprehending his business relations with others.

There must however be some restrictions as to the character of proof on this subject. The common-law judge and the jury will not be converted into a Court of Equity with a view of making a settlement of the partnership between these parties, showing the advances made by the one or the expenditures made by the order. The fact of the existence of the partnership and its dissolution or that none existed may be shown as bearing upon the issues made in connection with the testimony tending to show sanity or insanity on the part of the testator. Nor do we perceive any objection to the introduction of the evidences of title to the property claimed to be partnership property, that fact being conceded by the appellant, and for that reason he was induced, as the proof shows, to see that a will was executed showing his interest in the estate the title to which was vested in his brother.

The principal ground of complaint on the part of the appellant is the wide range given counsel for the appellee in the examination of the witnesses called to testify against the competency of the testator. The issue of will or no will seems to have been lost sight of, in the effort to establish the existence of facts affecting the general character of the appellant. His conduct with reference to his own family, and his statements made as to what had become of his wife and children on his return from Brazil after a long absence, and the

fact that those statements were untrue, was permitted to go to the jury when such testimony could throw no light on the issue the jury had sworn to try. Witness after witness was examined touching such matters, and their statements were not only calculated to prejudice but to inflame the minds of the jury against the appellant. What the appellant's trip to Brazil and his family relations had to do with the questions involved, and his general character for integrity, when not examined as a witness, can not be readily answered. All of such testimony should have been excluded as incompetent and foreign to the issue.

The witness Ray, who was present when the will was probated in the county court and who had prepared that instrument was sworn for the contestant and made a statement of facts conducing to show a want of mind on the part of the testator to make a valid disposition of his estate, and after testifying in this manner, was asked how long after the probate of the will before he mentioned the fact, and to whom, that in his opinion the testator had not sufficient mind to execute such a paper. He was allowed to fix the time and name the persons to whom these expressions of opinion had been made, and then some of those persons were called on to sustain this witness as to what his opinions were by proving his declarations to them on the subject. All such testimony was clearly incompetent and having been objected to by the appellant should never have gone to the jury.

Nor was it competent to show that Whaler had been regularly summoned as a witness and that attachments had been issued against him in order to destroy his testimony or in order to show that appellant from the existence of these facts alone was attempting to keep the witness from being cross-examined by the contestants. This witness had been examined by the propounders of the paper and time allowed the contestants to cross-examine him, and a failure to be present and submit to cross-examination would have been grounds sufficient to reject the entire deposition, instead of that however he was cross-examined, but the fact that an attachment had been issued is permitted to go to the jury to destroy the effects of his statements.

The proper mode of impeaching the witness was resorted to by counsel and there was no reason for permitting this character of proof to be introduced.

Nor was it competent to prove by witnesses the statements of his brother, the testator, as to the amount of moneys advanced to the appellant out of the firm. It is not contended that appellant was present when these statements were made and besides it was not for the jury to attempt to settle the accounts between them and such testimony was incompetent as already indicated. The court also erred in permitting the quesction as to the claim of appellant to the insurance policy to go to the jury. There is no pretense that the appellant is entitled to this insurance money or any interest in the policy and therefore has no claim to it or any bearing on the issue. After all the testimony had been introduced by the contestant as to the condition of appellant's mind and proof made as to the statements on the day and at the time the will was probated, and at the time it was executed, as well as statements he had made long prior thereto, the appellant was offered as a witness and denied the right to testify. The proper avowal was made as to what his statements would be and the question therefore arises, was he a competent witness?

It is urged that his testimony as to the competency of the testator being in chief, it was too late after others had testified as to the condition of testator's mind, to call the appellant as a witness. We have already indicated that when the statutory proof was made the burden was then on the contestant, and that in this class of cases as has been held in a number of decisions by this court where the contestant is through with his testimony, the propounder of the paper may then by way of rebuttal call on his witnesses to testify to the same matter. If such testimony is not considered by way of rebuttal it then follows that one offering a will for probate must introduce all his testimony in chief before closing his side of the case. When the presumption of sanity arises from the statutory proof the contestant is then required to assume the burden of showing a want of mental capacity on the part of the testator, and when the contestant closes, the case is open for testimony in support of the presumption that the testator had a disposing mind when he executed the paper. The appellant was therefore competent unless there is some other reason for excluding him as a witness. Nor is the appellant an incompetent witness by reason of section 606 of the Civil Code. This court in the case of *Flood v. Pragroff,* 79 Kentucky, 607, has decided this question and we perceive no reason

for departures from the construction given that provision of the Code in the particular case. This was a contest between the parties as to whether a certain paper was or was not the last will of B. H. Ogden. Some of the parties in interest had been prevented from making the issue by reason of the lapse of time and the infant alone left to contest the validity of that instrument. Statements and admissions made by the propounder at the date of the execution of the will have been shown and his lips closed as to any explanation on his part as to his conduct, or to deny that he made such statements as detailed by the witnesses. Regardless of this, however, this court in the case referred to where the question was directly raised said "Any other construction would operate in a contest on the probate of a will to exclude the evidence of one interested as to any statement made by the testator in the absence of one having or claiming a conflicting interest, or when the person having or claiming such interest is under fourteen years of age." The appellant was therefore a competent witness and should have been allowed to testify.

The questions propounded to the jury, and responded to, obviated any objection to the instructions. The court gave thirteen instructions and refused twenty-three asked by the appellant.

The following interrogatories were propounded by the appellant:

"Did Ben Ogden sign the will or make his mark to it or authorize his name to be signed?

Ans. "No."

For the contestant the jury was asked to say whether Ben Ogden was of sound mind and disposing memory when he executed the paper.

Ans. "He was not."

No instruction given could have influenced the minds of the jury in responding to these interrogatories, and therefore, if incompetent no complaint can be made. *Galbraith v. Arlington Mutual Life Insurance Company,* 12 Bush. 29.

The trial of this case might be greatly simplified by confirming the instructions to the issues made.

The jury must say whether or not the paper was signed, attested and acknowledged by the devisor as his last will as required by the statute, and whether he had a sound mind and disposing memory at the time he executed it. If he signed the paper as his last will, or

it was signed by another in his presence or by his directions and acknowledged by him in the presence of two or more credible witnesses who attested the paper by signing their names in the presence of the testator, the paper is then proven as required by the statutes.

If at the time the paper was executed the testator had mind enough to know the nature and character of his property, his relations to his family and those with whom he was connected, and to make a disposition of his estate according to his own wishes, and did make such a disposition of it by the paper in controversy it is valid as a last will and testament. This it seems to us embraces the law of the case, and while the court below is not restricted to giving such instructions only as indicated in this opinion they should be so few and simple as not to mislead the jury. What amounts to undue influence might be presented to the jury in an instruction and during the progress of the trial the court may see the necessity of explaining to the jury the purposes for which they are to consider certain testimony.

The judgment is *reversed* and cause remanded with directions to award a new trial and for proceedings consistent with this opinion.

*Sweeney & Sons*, for appellant.

*Owen & Ellis; G. W. Ray*, for appellee.